# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ANNETTE NOSKOWIAK,

        **Plaintiff,**

    **v.**

BOBST SA, BOBST GROUP USA, INC.,        **Case No. 04-C-0642**
ABC INSURANCE CO., XYZ COMPANY(S),

        **Defendants,**

    **and**

WAUSAU INSURANCE CO. (Subrogated Defendant/Misaligned Party).

---

# DECISION AND ORDER

---

On April 23, 2004, Annette Noskowiak ("Noskowiak") filed a complaint in the Circuit Court of Washington County, Wisconsin, in which she sought to impose liability upon the Defendants for defective machine design and breach of duty resulting in an injury to, and partial amputation of, Noskowiak's right hand. On July 2, 2004, Bobst Group USA, Inc. removed that action to this Court. On May 16, 2005 the Defendants filed a motion to exclude the testimony of Noskowiak's expert witness, Michael Studney ("Studney"). An expedited, non-dispositive motion was subsequently filed on June 14, 2005, in which the Defendants asked the Court to strike two reports submitted by Studney. The Court now proceeds to consider these pending motions.

# I. BACKGROUND

Noskowiak suffered an injury while cleaning a Bobst-manufactured flexographic printing press (the "Flexo 200") at International Paper in Cedarburg, Wisconsin. She was cleaning one of the press's rollers while it was operating, and her hand became ensnared by the rollers, resulting in injury to, and the ultimate amputation of, her little finger. The institution of this products liability action followed thereafter.

To bolster her case, Noskowiak has retained an expert, Studney, to offer the opinion that the Bobst press was defectively designed. (*See* Mem. of Law in Supp. of Def.'s Mot. in Limine to Exclude Testimony of M. Studney (hereinafter the "Supporting Memorandum") at 2.) The Defendants argue that Studney's opinions should be excluded because they fail to pass muster under the standards of reliability and relevance that regulate the admission of expert testimony.

In a scheduling order dated October 6, 2004, the Court set March 2, 2005 as the deadline for Noskowiak to disclose her experts and provide the Defendants with expert reports.[1] In a report dated February 6, 2005, Studney provided an "analysis" of the printing

---

[1]Rule 26(a)(2)(B) of the Federal Rules of Civil procedure states:

Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Case 2:04-cv-00642-RTR   Filed 09/02/05   Page 2 of 22   Document 80

press involved in Noskowiak's injury.[2]  The opening paragraph of Studney's February 6, 2005, Rule 26 report (his initial report) states:

> In my opinion, Ms. Noskowiak's injury . . . could have been prevented if the printing press was designed for more fail-safe operation.  It is my opinion the Bobst press has a high safety risk in contrast with the benefits or utility obtained in its operation, according to risk-utility principles.  The lack of proper guarding of this machine was a proximate cause of Ms. Noskowiak's injuries due to design defects, which were present when the machine left the manufacturer.  In my opinion, it is unreasonably dangerous in its design for the reasons I describe below.

(Aff. of B. Kushner in Supp. of Defs.' Mot. in Limine to Exclude Testimony of M. Studney ["Kushner Aff."] Ex. C .)  In the remainder of that report, Studney identifies those specific press features which were either defective or lacked proper safety mechanisms.  In an addendum dated March 10, 2005, Studney sought to clarify what he "had assumed was 'intuitively obvious' regarding guarding and alternative designs for sensors . . . ."  This addendum consists of two points: (1) guarding–i.e., the use of shields or safety covers to protect users from danger–is a general safety practice in the industry, as evidenced by certain OSHA regulations and language in Bobst's Flexo 200 manual; and (2) various switches are available to detect whether a press's safety covers are closed.

The Defendants, in their motion to exclude, launch a two-pronged attack against Studney, questioning both the relevance and the reliability of his opinions.  The Defendants

---

Fed. R. Civ. P. 26(a)(2)(B).

[2]A copy of Studney's February 6, 2005 report, titled "Inspection of Printing Press for Noskowiak v. Bobst Flexo 200, Serial No. 0217 013 04, 1995" is appended as Exhibit C to the affidavit of Beth J. Kushner submitted in support of the Defendants' motion to exclude Studney's testimony.

3

begin by arguing that his opinions are not relevant to the resolution of the present controversy. Three tributaries inform this argument. First, Studney erroneously utilized a risk/utility standard in reaching his conclusion that the Flexo 200 was unreasonably dangerous. Second, his opinions regarding the requirements of OSHA have no bearing on the salient issue of whether the Flexo 200 was unreasonably dangerous. Third, Studney offered a baseless opinion when he opined that the Flexo 200 should have contained a lockout device and emergency stop button on its rollers. In any event, the Defendants continue, Studney's opinion regarding the lockout device is irrelevant since the rollers were turning so quickly that even such a stop button would not have prevented the injury.

Moving beyond the questionable relevance of his opinions, the Defendants also contest the reliability of Studney's proposed testimony. They claim that Studney fails to qualify as an expert under Rule 702 of the Federal Rules of Evidence. The Defendants point out that, though he has a degree in mechanical engineering, Studney has not worked with printing presses for twelve years; for the past decade he has worked with locomotives. (Supp. Mem. at 9.) And, he has never worked with flexographic presses. (*Id*.) The Defendants also state that Studney's resumé is inaccurate, listing professional organizations of which he is currently not a member. (*Id*. at 9-10.)

Looking past his suspect credentials, the Defendants state that Studney's testimony also lacks any indicia of reliability. They support this claim by listing those items upon which Studney relied in formulating his opinions, including: talking to Noskowiak, looking

4

at a "concept sketch" he drafted over a decade ago, looking at a "spare parts" kit he kept, printing information off of the internet, reviewing OSHA regulations, and reviewing a press operator's manual and some documents from Noskowiak's employer.

No less troubling, the Defendants allege that Studney's opinions are unreliable insofar as they are merely conclusory and lack any empirical basis. Studney did not perform any testing, have his opinions subjected to peer review, conduct any analysis of the rate of error of his opinions, nor determine if his conclusions would be accepted by the relevant scientific community. For example, Studney suggested improvements to the Flexo 200 related to an emergency stop button and nip guard. However, he never tested these proposed modifications and, therefore, could not determine the viability of his suggestions or their overall impact on the press and its processes. Studney also opined that there was no lockout for the press's rollers; however, such a lockout had been in place well before the accident in question occurred.

Considering the absence of reliability and relevance, the Defendants claim that Studney's opinions will not assist a trier of fact because he utilized an incorrect legal standard and applied OSHA standards, which have no bearing on the present controversy. Similarly, the Defendants state that this Court should prohibit Studney's proffered opinion that a warning should have been in place on the press. The Defendants argue that Seventh

5

Circuit law requires experts to draft those warnings that they believe would have been appropriate. Studney has not done this.[3]

Not surprisingly, Noskowiak does not agree with the Defendants' assessment of her expert and his opinions. First, Noskowiak states that the Defendants have misapplied the relevant legal standard in this case. The bulk of Noskowiak's responsive brief attempts to rebut the Defendants' claim that Studney's testimony and opinion are not reliable. Noskowiak points out that Studney's curriculum vitae clearly shows that he worked on printing presses, albeit over ten years ago. (Noskowiak states that there is no requirement that an expert be currently employed in the field of his/her expertise.) Next, Noskowiak states that, contrary to the Defendants' assertion, Studney is permitted to rely on his experience when formulating his opinions. Thus, the charge of speculative or unfounded opinions is not warranted.

Noskowiak argues that the Defendants place undue emphasis on the fact that Studney did not test his theory, establish rates of error, or show that his conclusions would be accepted in the relevant legal community. She asserts that the guideposts for assessing expert testimony, as set forth in *Daubert v. Dow Pharm., Inc.*, 509 U.S. 579 (1993), are not mandatory. And, Noskowiak claims that Studney was not permitted to conduct further testing despite a request to do so, and, even if this were not the case, *Daubert* does not

---

[3]This particular point–the failure of Studney to draft a warning–is not contested by Noskowiak. Noskowiak does point out that "the Standards [ANSI] fail to identify an acceptable warning as well." (Pl.'s Br. in Opp'n to Defs.' Mot. to Exclude the Expert Testimony of M. Studney at 16.)

6

require testing. The remainder of Noskowiak's points related to the *Daubert* guideposts are readily summarized: peer review and acceptance by the relevant community are established by the harmony between Studney's opinions and those standards promulgated by the American National Standards Institute ("ANSI").

In the final analysis, Nowskowiak maintains that Studney's testimony will assist the trier of fact by providing information about the technical workings of printers.

II. ANALYSIS

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and *Daubert v. Dow Pharm., Inc.*, 509 U.S. 579 (1993). *Smith v. Ford Motor Co.*, 215 F.3d 713, 717-18 (7th Cir. 2000). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This rule requires the Court to ensure that "all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 588. The Seventh Circuit has identified a two-step process for courts to discharge this "gate-keeping" function. *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344 (7th Cir. 1994). First, the Court must assess whether the purported expert's testimony pertains to scientific knowledge. *Id.* (stating that inquiry must rule out "subjective belief or unsupported speculation").

7

Second, the Court should determine whether the expert's testimony will assist the trier of fact "in understanding the evidence or in determining a fact in issue." *Id*. The party seeking to offer expert testimony "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee's note, 2000 Amendments ¶ 1 (interpreting Fed. R. Evid. 104(a)).

First, the Court addresses which legal standards govern the claims in this case. The Defendants state that Studney incorrectly utilized a risk/utility standard when conducting his analysis whereas the correct standard governing this controversy is "consumer expectation." (Supp. Mem. at 18.) They further argue that, under Wisconsin product liability law, the relevant question in this case is whether the Flexo 200 was defective and unreasonably dangerous. (Supp. Mem. at 6.) Noskowiak counters that the Defendants have misunderstood the "consumer expectation" standard, (Opp'n Br. at 7), and, in any event, if they think that Studney has "applied the wrong standard, cross-examination on that issue is available." (Opp'n. Br. at 7.) The applicable standard may affect any assessment of the relevance of Studney's opinions and, therefore, merits further examination.

The Court looks to Noskowiak's complaint to identify those claims she brings against the Defendants. That complaint, originally filed in Wisconsin circuit court, alleges claims for (1) defective design or strict product liability and (2) breach of duty or negligence-based liability.[4] (*See* Compl. ¶¶ 11, 15.) This Court, in *Komanekin v. Inland Truck Parts*, had

---

[4] These are also the two claims identified by the Defendants in a subsequently filed motion for summary judgment. (*See* Docket No. 69.)

occasion to differentiate these two theories of liability. 819 F. Supp. 802 (E.D. Wis. 1993). While both types of claims require a party to demonstrate that a product was "unreasonably dangerous," the required showing under each theory differs. In strict liability theory, the question is not whether the manufacturer or seller should have designed the product differently, but rather whether the product, as designed, contained dangers that would not be apparent to the ordinary consumer. *Komanekin*, 819 F. Supp. at 808 (citing *Delvaux v. Ford Motor Co.*, 764 F.2d 469, 474 (7th Cir. 1985); *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 230 N.W.2d 794, 798 (Wis. 1975)). By contrast, the negligence theory of recovery hinges on "whether the seller could have come up with a less dangerous design." *Komanekin*, 819 F. Supp. at 808. Having identified the legal standards operative in this case, the Court assesses the parties' arguments.

As a preliminary matter, the Court finds the question of the applicable legal theory to be relevant. First, the legal premise from which Studney was operating, e.g., risk/utility, may have colored the methodology or approach by which he arrived at his conclusions. An expert cannot testify to something that is not relevant to the present controversy. *See Deimer*, 58 F.3d at 344 (explaining that testimony must "fit" the issue to which the expert is testifying). Second, the Court disagrees with Noskowiak's contention that cross-examination is the proper remedy for curing her expert's purported application of the wrong legal standard when conducting his analysis. Testimony based on an incorrect legal standard may confuse the jury, and may be proscribed by the Court pursuant to Rule 403 of the Federal Rules of

Case 2:04-cv-00642-RTR   Filed 09/02/05   Page 9 of 22   Document 80

Evidence. Part of the Court's gatekeeping function is to exclude largely irrelevant evidence. *See* Fed. R. Evid. 402. Put another way, while Studney is not required to opine on an ultimate issue in the case, see *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000), his testimony should not be a source of confusion by invoking a legal standard, which entails a different set of issues than those operative in the present controversy.

Drawing from these premises, Studney's reliance on OSHA standards is irrelevant and even casts the reliability of his opinion into doubt. The Court agrees with the Defendants that the standards articulated by OSHA are not relevant in the present case. The OSHA standards apply to employers, not to manufacturers. *See Porchia v. Design Equipment Co.*, 113 F.3d 877, 881 (8th Cir. 1997); *Byrne v. Liquid Asphalt Sys. Inc.*, 238 F. Supp. 2d 491, 493 (E.D.N.Y. 2002) (excluding testimony that manufacturers violated OSHA and finding such testimony greatly prejudicial and minimally probative because OSHA does not apply to manufacturers). Studney's attempt, in his March 10, 2005 addendum to explain the presence of a "general safety practice" by referencing OSHA is legally incorrect and would likely mislead or confuse a trier of fact. Utilizing OSHA is not the only instance of Studney invoking an incorrect legal standard to show how he reached his conclusions.

The Court next inquires into the relevance of Studney's risk/utility methodology related to Noskowiak's claims. First, the Court considers Studney's opinions for purposes of Noskowiak's strict liability claim. In his February 6th report, Studney states that, employing a risk/utility methodology, he has identified various elements of the Flexo 200 that

10

were defective or could have been made safer.  As a result, Studney concludes that the Flexo 200 was "unreasonably dangerous in its design."  In *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, the Supreme Court of Wisconsin, adopted factors, identified by the Seventh Circuit, that may prove useful to plaintiffs attempting to establish that a product is defective and unreasonably dangerous:

> "1) [C]onformity of defendant's design to the practices of other manufacturers in its industry at the time of manufacture; 2) the open and obvious nature of the alleged danger; . . . 3) the extent of the claimant's use of the very product alleged to have caused the injury and the period of time involved in such use by the claimant and others prior to the injury without any harmful incident . . . 4) the ability of the manufacturer to eliminate danger without impairing the product's usefulness or making it unduly expensive; and 5) the relative likelihood of injury resulting from the product's present design."

360 N.W.2d 2, 17 (Wis. 1985) (citing *Collins v. Ridge Tool Co.*, 520 F.2d 591, 594 (7th Cir. 1975)).  The *Sumnicht* Court also suggested that proof of alternate designs was not required under Wisconsin law related to products liability.  *See Sumnicht*, 360 N.W.2d at 17.  The Court further stated that "[t]he existence of a product's defective design that is unreasonably dangerous can be established through expert opinion testimony that was formed after an examination of the product.  *Id*.

In a later case, the Supreme Court of Wisconsin clarified that the proffering of alternative designs is not directly germane to the prevailing standard of strict products liability under Wisconsin law.  In *Green v. Smith Nephew AHP, Inc.*, the Court, while

11

reiterating the prevailing standard in strict product liability cases,[5] clarified certain factors that may be relevant to "determining whether the ordinary consumer could anticipate and, hence, contemplate an alleged unreasonably dangerous defect." 629 N.W.2d 727, 740 (Wis. 2001). The *Green* Court interpreted *Sumnicht* and clarified the role of those factors that may assist a trier of fact when considering the consumer expectation test. Relevant to this case, the *Green* court examined the *Sumnicht* factor that demonstrates "the ability of the manufacturer to eliminate danger without impairing the product's usefulness or making it unduly expensive." *Green*, 629 N.W.2d at 741 (citing *Sumnicht*, 360 Wis. 2d at 2). The *Green* Court explained the proper place of this factor:

> This factor does not imply that in determining a manufacturer's liability, a trier of fact must balance the danger that the manufacturer's product presents to consumers with the benefits or cost-value of the product . . . . To the contrary, this factor allows parties to show that due to the inherent nature or cost of a particular product, the ordinary consumer may expect, for example, the product to include more or less safety devices.

*Green*, 629 N.W.2d at 740-41. Furthermore, the *Green* Court stated that the *Sumnicht* factors were "not supplements to the consumer-contemplation test, to be considered in addition to consumer expectations. Nor are these factors independent legal tests." *Id*. at 740. Instead,

---

[5]*Green* cites to the standard of strict liability as espoused in *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 230 N.W.2d 794 (1975). *Vincer* stated:

> Thus, the test in Wisconsin of whether a product contains an unreasonably dangerous defect depends upon the reasonable expectations of the ordinary consumer concerning the characteristics of this type of product. If the average consumer would reasonably anticipate the dangerous condition of the product and fully appreciate the attendant risk of injury, it would not be unreasonably dangerous and defective. This is an objective test and not dependent upon the knowledge of the particular injured consumer.

*Vincer*, 230 N.W.2d at 798.

12

"the *Sumnicht* factors are considerations that may be relevant to determining whether the ordinary consumer could anticipate and, hence contemplate an alleged unreasonably dangerous defect." *Id*.

Studney has employed a methodology (risk/utility) that relies upon an incorrect legal standard. Noskowiak has not explained how Studney's report will assist the trier of fact under Wisconsin's strict product liability standard. Studney's risk/utility analysis does not discuss consumer expectation. In fact, based on his reports, the guidepost of consumer expectation did not influence Studney's analysis at all. Of course, the Court is aware that, at least on the face of the reports, it is dubious that Studney even undertook any type of rigorous risk/benefit analysis. Rather, it appears as though he simply attempted to identify features that could be improved to make the Flexo 200 safer or more compliant with industry standards.

The legal theory Studney was operating under directly impacts his opinions. For example, under a strict liability standard, Studney's opinions, to be relevant, must help the trier of fact determine whether the design of the Flexo 200 present dangers not apparent to the ordinary consumer or user. Now, it is possible that Noskowiak might claim that the March 10th addendum showed that Studney's opinions, insofar as they relied on, and/or reflected prevailing safety standards, spoke to the issue of consumer expectations. Although, this possibility, if that is what Noskowiak intended, is somewhat confused by Studney's own statement that the addendum was to clarify his suggestions "regarding guarding and

13

*alternative designs* for sensors." (emphasis added.)  The idea of "general safety practice" referenced in both the February 6th report and March 10th addendum, may be a way of discussing consumer expectation.  However, such an understanding is not evident in Studney's reports; Noskowiak has not forwarded this argument either.[6]  Likewise, industry standards are surely not something "intuitively obvious."  (See Kushner Aff. Ex. D., ¶ 1.) And, as the Court has already made clear, OSHA does not provide the safety or design standards for printing press manufacturers.

This may be a case of Studney sinking his own ship.  Though doubtful, perhaps Noskowiak could have argued that Studney's own personal experience had acquainted him with industry standards, which in turn were relevant to the issue of consumer expectations. However, this potentially viable argument was sunk when Studney started identifying those elements informing his views, e.g., OSHA standards, intuition, and vague references to available technology.  Surely Noskowiak would not claim that the industry standards were so second-nature to Studney that his own self-referencing provided legitimacy for his opinions and thereby obviated the need to identify any external reference points, such as the ANSI standards.

The Court now turns to consider the relevance of Studney's claims under Noskowiak's negligence claim.  Arguably, Studney's opinions are relevant by suggesting

---

[6]For that matter, Noskowiak has limited herself to one and one-half pages in her brief discussing how Studney's testimony is relevant.  (Opp'n Br. at 7-8.)  In that brief space, Noskowiak focuses on how Bobst has misstated the requirements of the consumer expectation test.  Noskowiak does not affirmatively explain *why* Studney's reports and his testimony would be relevant.

ways that the Defendants could have made the Flexo 200 safer. Presumably, Noskowiak would argue that Studney's proposed changes, modifications or improvements show that the Defendants' design was unreasonably dangerous and, therefore, they breached their duty to produce a less dangerous machine. However, even operating from this premise, Studney's opinions fail under *Daubert*'s requirement of reliability.[7]

Testimony is reliable if the "expert is qualified in the relevant field and . . . the methodology underlying the expert's conclusions is reliable." *Masters v. Hesston Corp.*, 291 F.3d 985, 991 (7th Cir. 2002). Noskowiak states that "[i]t is not clear what legal basis Defendants use to argue that an expert witness must be working in the particular field of expertise that he has opined on at the time the opinion is made upon in order to render an opinion." (Opp'n Br. at 8.) Common sense–a sometimes dangerous concept–nevertheless suggests that an "expert" keeps his knowledge level current with that field in which he claims a particularized, expert knowledge. If an expert has not been involved in a particular field for a sustained period of time and has not kept abreast of developments within that field, his claim to "expertise" may be somewhat suspect. During that time, trends and patterns may change or be updated in an industry. Though troubling, the fact that Studney may no longer be actively working in the printing field is not dispositive of the reliability of his opinions.

---

[7]Even though the parties' briefs on this matter focus only on strict liability, Noskowiak's complaint also states a claim for breach of duty or negligence-based liability. In contrast to strict liability which focuses on the product itself, negligence looks to the manufacturer's conduct. *See Friedrichs v. Huebner*, 329 N.W.2d 890, 903 (Wis. 1983). (The Court is left to wonder why, if she is in fact forwarding a negligence claim, Noskowiak has not crafted an argument that could potentially demonstrate the relevance of Studney's reports for such a theory.)

It is clear, however, that contrary to Noskowiak's suggestions, Studney's prior experience as an expert witness does not demonstrate that now he should qualify as an expert witness. This is a non-argument. The type of expertise that Studney claims is not obtained through prior testimony in prior actions.

Much more serious are the apparent falsehoods on Studney's resumé/curriculum vitae. The Defendants point out that Studney is not, in fact, a current member of any of the professional organizations that he identifies on his resumé and has not been for approximately ten years. (Supp. Mem. at 9-10.) Noskowiak, not surprisingly does not address this point in her opposition brief. It goes without saying that a party receiving a professional's resumé may assume that it is current. Apparently, this is not the case for Studney. The Court finds the proffering of such outdated information to be misleading. However, though inexcusable, the Court recognizes that such a lapse could, in fact, have been an oversight and will not seize on that failure and here end its examination of the pending motions based on Studney's lack of credibility. The Court will generously assume that these errors were oversights.

Questions about the reliability of Studney's opinions extend beyond his qualifications and reach the methodology he employed. It is difficult for the Court to determine whether Studney is suggesting ways to make the Flexo 200 safer (i.e., providing alternative designs) or simply identifying inherent defects. Perhaps, both inquiries overlap significantly in the instant action. However, even if the Court found that alternative design was directly relevant

16

in the present case (perhaps it is, to Noskowiak's negligence claim), Studney's reports and testimony fail under *Daubert* for lack of reliability. Noskowiak protests that testing is not an absolute prerequisite to the admission of expert testimony. (Opp'n Br. at 10.) In fact, Noskowiak cites *Cummins v. Lyle Indus.*, 93 F.3d 362 (7th Cir. 1996), which declares that "there may be a situation in which personal experiments or observations meet the requirements of *Daubert*." However, much like the court in *Cummins*, this Court finds that Studney's opinions "clearly lend themselves to testing and substantiation by the scientific method." The lack of analysis related to prophylactic measures an employer could have taken were well summarized by the *Cummins* court when it identified those considerations that an expert witness must usually consider when advocating possible alternative designs:

> There are a number of considerations which must inform such a conclusion. These include, but are not limited to, the degree to which the alternative design is compatible with existing systems and circuits; the relative efficiency of the two designs; the short- and long-term maintenance costs associated with the alternative design; the ability of the purchaser to service and to maintain the alternative design; the relative cost of installing the two designs; and the effect, if any, that the alternative design would have on the price of the machine. many of these considerations are product- and manufacturer-specific, and most cannot be determined without reliable testing.

*Cummins*, 93 F.3d at 369.

Studney's reports do not show that he has considered any of the elements described in *Cummins*. (*See* Aff. B. Kushner, Ex. A, Tr. 66: 5-13; 88: 8-10; 156-157.) Absent any type of systematic analysis or reference to any authoritative materials, Studney's testimony regarding proposed improvements is little more than conjecture and speculation in this

17

regard.  *See Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 614 (7th Cir. 1993).  Furthermore, Studney's repeated assertions that certain technology was available that might have improved the Flexo 200, absent more, does not demonstrate any significant level of "intellectual rigor" that one might expect from an engineer examining a machine.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  In fact, by his own testimony, Studney acknowledged that his own employer would not consider proposed improvements such as those he proposes in this case, without first rigorously analyzing and testing the proposed change.  (*See* Aff. B. Kushner, Ex. A, Tr. 156-157.)

Noskowiak tries to make a showing of reliability through the back door; she places a great deal of emphasis on the fact that Studney's opinions coincide with relevant ANSI standards.  Noskowiak, in her opposition brief, references the ANSI standards as some form of post-hoc proof that that Studney's opinions were credible and reliably achieved.  (*See, e.g.,* Opp'n Br. at 12 ("Here, Studney's opinion meets peer review because all of Mr. Studney's opinions are the same or similar to what is required by and contained in the ANSI standards.")) If Noskowiak were arguing that Studney's knowledge of the ANSI standards pointed to a consumer expectation and led him to identify defects in the Flexo 200, such an argument might warrant admission of his testimony.  However, Noskowiak has not connected those standards in any way with the process by which Studney actually analyzed the Flexo 200.  If an expert's opinion, achieved through guesswork and speculation, happens to coincide with an organized body of regulations, that does not retroactively imbue the expert's

18

suspect procedures with reliability. To suggest as much would be to deem testimony "expert" though it amounted to little more than "unscientific speculation offered by a genuine scientist." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).

Noskowiak finally argues that "Studney's testimony would assist a jury in understanding 'nip' and 'pinch' points, the proper way to install a nip guard, the concept and science behind interlock devices, warning labels and emergency stop buttons." (Opp'n Br. at 15.) This educational information is not contained in Studney's reports and, in any event, the Court would not know how to assess the proffering of such testimony distinct from Studney's inadmissible testimony that the Court has reviewed for purposes of resolving the motions before it. If Studney's educational testimony about "interlock devices" will be similar to that found in his March 10, 2005 addendum, the Court will not allow it.[8] In any event, the Court cannot separate the chaff from the grain with respect to Studney's testimony. The Court does not know what testimony he would have provided to educate the jurors on the functioning of presses, and the Court will not guess.

Noskowiak has failed to carry her burden of showing that Studney's testimony is admissible under *Daubert* and the Rules of Evidence. The Court will not manufacture

---

[8]Noskowiak states that "Wisconsin law requires expert testimony for product liability claims." She supports this proposition by citing to *Netzel v. State Sand & Gravel*, 186 N.W.2d 258 (1971). Having reviewed that case and Wisconsin case law, the Court understands that the "requirement" of expert testimony is to be undertaken on a case-by-case basis in most instances. However, *Netzel* states that expert testimony has not been required by Wisconsin courts when determining "whether a particular machine or mode of doing business was dangerous, whether certain inferences could be drawn from answers to questions on an application form, and whether defendant's negligence was a substantial factor in injuring plaintiff when defective bleachers collapsed." *Netzel*, 186 N.W.2d at 261-62.

arguments on her behalf and, her response to the Defendants' brief has done little to dispel the Court's concerns. There is more to this inquiry, however.

On June 14, 2005, Bobst filed an expedited, non-dispositive motion to strike a report by Studney submitted on May 10, 2005 and a June 10, 2005 declaration by him. Bobst argues that these submissions are well-past the deadline for filing expert reports and, further, there is no justification for their tardiness. Noskowiak responds by saying that these submissions were made in response to the Defendants' objections and "to alleviate any concerns the Court (and Defendants) might have about Studney's qualifications as an expert." (Pl.'s Mem. in Opp'n to Defs.' Mot. to Strike the Decl. and Am. Report of M. Studney [Pl.'s Memo in Opp'n] at 1.)

The Court does not understand Noskowiak's reasoning. She states that "[a]fter an extensive deposition examination . . ., Studney reviewed the Standards (ANSI) and determined that his initial report exactly matched what the Standards require." (*Id*. at 1.) This statement seems to miss the point. The salient issue is not whether Studney's opinions fortuitously match industry standards; the issue is how Studney formed his opinion and whether that opinion will assist the trier of fact. Noskowiak also states that "[t]he key for this Court to remember is that Studney's opinion that the Machine is defective has not changed–he still believes the Machine is defective for the same reasons previously identified in his initial report." (*Id*.) While this may be true, it does little to help Noskowiak since the

20

Court has already found that Studney's opinions, as identified in his first two reports, lacked both relevance and reliability.

Nevertheless, Noskowiak invokes Rule 26 of the Federal Rules of Civil Procedure for the proposition that the rules contemplate additions to, and supplementing of, expert reports. (*Id.* at 2.) The Defendants argue that Studney's latest offerings are new opinions. (*See* Defs.' R. 7.4 Expedited Non-Dispositive Mot. to Strike May 10, 2005 Expert Report and June 10, 2005 Decl. of M. Studney [Defs.' 7.4 Mot.] ¶ 4.) Alternatively, the Defendants state that, under the rules governing supplementation, Studney's new offerings must fail as well. Noskowiak claims that Studney is only supplementing his original report insofar as he is proffering information further clarifying his original, unchanged opinion. Noskowiak counters that the Defendants cannot claim "surprise" because the ANSI standards were available to them all along and, in any event, they will not be prejudiced by allowing Studney to opine on those standards. Noskowiak's response to the Defendants' 7.4 motion indicates that she considers Studney's latest supplement to be just that, a supplement and not a new opinion.

Based on the Court's previous discussion, Studney's May 10th supplement and June 10th declaration cannot be supplements. At this point, there is no original opinion to supplement; it has been stricken. The Court, in effect, would have to treat Studneys' most recent supplement and declaration as new opinions rendered outside the time prescribed by

Case 2:04-cv-00642-RTR   Filed 09/02/05   Page 21 of 22   Document 80

this Court and Rule 26. Noskowiak has not moved the Court to entertain such a new opinion and that issue has not been briefed by the parties.

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

The Defendants' Motion in Limine to Exclude the Testimony of Michael Studney (Docket No. 45) is **GRANTED**.

The Defendants' Rule 7.4 Expedited Non-Dispositive Motion to Strike May 10, 2005 Expert Report and June 10, 2005 Declaration of Michael Studney (Docket No. 61) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 2nd day of September, 2005.

**BY THE COURT**


s/ Rudolph T. Randa
_____
**Hon. Rudolph T. Randa**
**Chief Judge**

22